IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **RANDY ALLEN** | CIVIL NO.   2:24-cv-00763 |
| **Plaintiff,** | |
| v. | SECTION: |
| **CONCENTRIX CVG CUSTOMER MANAGEMENT GROUP, INC.** | JUDGE: |
| **Defendant.** | MAGISTRATE: |

**COMPLAINT AND
REQUEST FOR JURY TRIAL**

NOW INTO COURT, through undersigned counsel, comes Plaintiff, **RANDY ALLEN,** a person of the age and majority, who respectfully represents that:

1. **CONCENTRIX CVG CUSTOMER MANAGEMENT GROUP, INC.** (hereinafter "**CONCENTRIX**"), an Ohio corporation, is made Defendant herein, and is justly and truly indebted to Plaintiff for past loss of wages, damages, penalties, and attorneys' fees as are reasonable, together with interest thereon from date of judicial demand until paid, and for all costs of this proceeding, for the following reasons.

**INTRODUCTION**

2. In this action brought by Plaintiff, **RANDY ALLEN,** alleges that Defendant, **CONCENTRIX** terminated his employment in retaliation for requesting reasonable accommodations due to his disability, illegal retaliation and discrimination under federal law. Plaintiff brings this action seeking damages, restitution, liquidated damages, civil penalties, prejudgment interest, and other relief that the Court deems just and reasonable under the circumstances.

1

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this is a civil action arising under the Americans with Disabilities Act as amended by the ADA Amendments Act (ADAAA) (42 U.S.C. § 12101 to 12213).

4. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)(2) in that the claim arose in the Eastern District of Louisiana, because Plaintiff was employed in the Eastern District of Louisiana and Plaintiff conducted the work for which he was employed by CONCENTRIX in the Eastern District of Louisiana.

## PARTIES

5. Plaintiff, **RANDY ALLEN**, is a person of the age of majority. At all relevant times, Plaintiff was a resident of St. Bernard Parish. At all relevant times, Plaintiff was, but is no longer, an employee of Defendant, as defined in 42 U.S.C. § 12111 *et seq.*, working as a Platform Engineer and Lead Consultant for approximately four years. At the time of the discrimination and retaliatory action, Plaintiff was working remotely from his home in St. Bernard Parish.

6. At all relevant times, Defendant was and remains an enterprise engaged in commerce as defined in 42 U.S.C. § 12111 (5)(A). Furthermore, CONCENTRIX is considered an "employer" within the meaning of 42 U.S.C. § 12111 (5)(A).

7. At all times material hereto, Plaintiff was employed by Defendant CONCENTRIX, which was engaged in commerce within the meaning of 42 U.S.C. § 12111(7).

## CONDITIONS PRECEDENT

8. On July 26, 2023, Plaintiff timely filed a charge of discrimination and retaliation with the Equal Employment Opportunity Commission (EEOC).

9. On February 22, 2024, the EEOC issued Plaintiff a Notice of Right to Sue, therefore Plaintiff has fully complied with all prerequisites to jurisdiction in this Court under 42 U.S.C. §§ 12101 *et seq*.

## FACTS

10. Plaintiff began working for Defendant's predecessor company in 2019 as an Application Programming Interface (API) Senior Platform Engineer. His manager at the time of hiring was Lena Chipman.

11. When Plaintiff began working for Defendant's predecessor company, he did a significant amount of work travel and purchased a gaming laptop installed with movies and video games that he used in his spare time on work trips.

12. After the predecessor company was acquired by Defendant, Plaintiff was provided with a company laptop. He moved all of his personal laptop work items as well as video games and movies to the company provided laptop. Lena Chipman was aware of this action as well as Plaintiff's diagnosed Attention Deficit Hyperactivity Disorder ("ADHD").

13. Plaintiff's ADHD causes him to experience difficulty focusing and maintaining concentration for extended periods of time, meeting the disability definition under the ADAAA and impairments of a major life activity in the ADAAA. Plaintiff's disability is typically controlled with medication.

14. During his tenure working for Defendant, Plaintiff received positive performance evaluations and was promoted from Senior Platform Engineer to Lead Consultant for API Platforms.

15. During his tenure, Plaintiff was the engineer for large scale clients such as T-Mobile and Google Cloud.

16. During his tenue, Plaintiff's manager was changed from Lena Chipman to Brad Hamil. Lena Chipman did not advise Hamil of Plaintiff's ADHD.

17. Plaintiff's exemplary performance reviews did not immediately change when his management changed. In October 2022, at his annual performance evaluation, Brad Hamil recommended that Plaintiff receive the highest raise possible for his pay level due to his exemplary performance.

18. On October 12, 2022, the U.S. Food and Drug Administration announced a shortage of Adderall, the commonly prescribed treatment for Attention Deficit Hyperactivity Disorder.

19. In October 2022, Plaintiff and Brad Hamil had a conversation wherein Brad Hamil learned the first time of Plaintiff's ADHD.

20. In November 2022, in a weekly feedback meeting, Brad Hamil informed Plaintiff that he was one day late on an assignment. Plaintiff advised Hamil he was having difficulty due to his lack of medication for ADHD.

21. On December 9, 2022, in a one-on-one meeting between Plaintiff and Hamil, Hamil outlined three deficiencies in Plaintiff's work: 1.) missing two customer deadlines; 2.) failure to respond to team member questions within a timely manner; and 3.) tardiness with timesheets.

22. On December 16, 2022, Hamil emailed Plaintiff noting Plaintiff's efforts and improvements in job performance following the December 9 meeting. Hamil outlined the previously discussed areas that needed improvement, acknowledged the difficulties Plaintiff was having caused by his inability to obtain his medication, and offered assistance or accommodation.

23. Prior to learning of Plaintiff's ADHD, Hamil had no criticisms whatsoever of Plaintiff's job performance.

24. On January 20, 2023, Plaintiff and Hamil had another meeting regarding Plaintiff's job performance which was memorialized by Hamil in an email to Plaintiff on the same date. Hamil made several criticisms of Plaintiff's performance including missing a client's email, failing to perform required team lead duties in one project, and delayed response to three team messages.

25. In response to Hamil's email, Plaintiff stated since December, he had been excluded from all engagement meetings and had not been given any new work. Plaintiff was removed from ongoing Pepsico, Equifax, and Wells Fargo tasks. Moreover, Plaintiff was given different and higher expectations as project team leader than the other four team leaders. Only three team member messages were met with delayed response- one during Randy's lunch hour, one on a sick day, and the last when he had taken his dogs to the vet. He missed only one client message that was directed to the entire team. Plaintiff felt he was being discriminated against by his manager's negative connotations regarding ADHD.

26. In January 2023, Plaintiff emailed Hamil and Libby Schwarte of Human Resources to request reasonable accommodations for his ADHD. On January 23, 2023, Plaintiff received a response email requesting a list of accommodations.

27. Plaintiff researched ADHD accommodations and met with Libby Schwarte on February 2, 2023 to discuss them. His requested accommodations included a written list of expectations and deadlines for each project, a new supervisor, permission to submit his timesheets on the Monday following each week, and coaching regarding timesheet and schedule adherence.

28. The only accepted accommodation was Plaintiff's turning in each week's time sheets the following Monday. Plaintiff's requests for additional work tasks were ignored, he was not re-included in meetings, and his other accommodation requests were ignored.

29. On February 10, 2023, Schwarte and Plaintiff discussed the accommodations he requested and Schwarte advised that a doctor's note documenting Plaintiff's ADHD would be helpful. Plaintiff provided the note.

30. On February 13, 2023, Plaintiff received an email with a termination letter dated February 9, 2023 which terminated Plaintiff's position effective February 10, 2023.

31. No other employees on the API engineering team were terminated. Plaintiff was the second most senior member of the API engineering team but was terminated. New members of the API engineering team were hired within three months prior to Plaintiff's termination. Within three months after Plaintiff's termination, Defendant posted a job position for

Plaintiff's old role. Any assertion that Plaintiff's termination was part of a large-scale workforce reduction is confounded by these facts.

32. Defendant has offered two shifting explanations for Plaintiff's termination: a large scale reduction in workforce and termination due to poor performance.

33. Defendant has claimed Plaintiff was terminated for playing video games during a four hour long video call in which Plaintiff was requested to be on the call on standby. Plaintiff was not a speaker on the call or given any tasks or assignments on the call. To accommodate his ADHD, Plaintiff was attentively listening while playing a simple game on another laptop.

34. Defendant failed to terminate other consultants for far more egregious conduct during video calls. Yet, Hamil determined Plaintiff's playing of a game while listening on one video call was the "smoking gun" he needed to terminate Plaintiff for poor performance.

## COUNT ONE

## Disability Discrimination and Retaliation in Violation of the Americans with Disabilities Act as amended by the ADA Amendments Act (ADAAA) (42 U.S.C. §§ 12101 – 12213)

35. Plaintiff repeats and realleges paragraphs 1 through 34, as if fully set forth herein.

36. Plaintiff has Attention Deficit Hyperactivity Disorder, which is a medical condition that meets the disability definition under 42 U.S.C. § 12102(1) and his focus and concentration impairments affect major life activity under the ADAAA, 42 U.S.C. § 12102(2)(A).

37. Defendant CONCENTRIX failed to engage in an interactive process of finding reasonable accommodations for Plaintiff's disability, failed to accommodate Plaintiff's disability, and subjected Plaintiff to retaliatory adverse actions.

38. Plaintiff was subjected to higher performance standards than co-employees in his same role, Plaintiff was excluded from meetings, was not assigned work, and ultimately was terminated only weeks after requesting accommodations and a mere three months after his manager learned of his ADHD.

39. Plaintiff suffered damages because of Defendant's unlawful discriminatory actions, including extreme emotional distress, past and future lost wages and benefits, harm to his professional reputation, and the costs of bringing this action.

## COUNT TWO

### Retaliation in Violation of La. Rev. Stat § 23:322 et seq.

40. Plaintiff repeats and realleges paragraphs 1 through 39 hereof, as if fully set forth herein.

41. Plaintiff has Attention Deficit Hyperactivity Disorder, which is a medical condition that meets the disability definition under La. Rev. Stat § 23:322 and his focus and concentration impairments affect major life activity under La. Rev. Stat § 23:322.

42. Once Plaintiff notified his supervisor Hamil of his disability, he was subjected to retaliatory adverse actions including being subjected to higher performance standards than his peer team leaders, excluding him from meetings, and failing to assign him work. Hamil refused to discuss or accommodate Plaintiff's requests for reasonable accommodation.

43. CONCENTRIX terminated Plaintiff mere weeks after his request for accommodation.

44. Plaintiff suffered damages because of Defendant's unlawful retaliatory actions, including monetary losses, emotional distress, past and future lost wages and benefits and the costs of bringing this action.

45. Defendant willfully violated Plaintiff's rights under the ADA and Louisiana's counterpart, and, as a result, is liable for front and back pay, pain and suffering damages, statutory penalties and reimbursement of attorneys' fees and costs.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests judgment as follows:

A. Award Plaintiff for past lost wages and benefits, plus interest;

B. Order Defendant to pay Plaintiff his front pay until such time as comparable employment is obtained (including benefits);

C. Award to Plaintiff liquidated damages incurred in connection with this action, equal to the sum amount of backpay and interest;

D. Award to Plaintiff all costs and reasonable attorneys' fees incurred in connection with this action;

E. Grant Plaintiff such additional or alternative relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims properly triable by a jury.

Dated: March 26, 2024
New Orleans, Louisiana

Respectfully submitted,

**BUSINESS LAW GROUP, LLC**

By: */s/ Amanda Butler*
Amanda J. Butler (T.A.) (Bar No.31644)
abutler@lawgroup.biz
Megan W. Kelley (Bar No.37189)
mkelley@lawgroup.biz
900 Camp Street, Suite 450 (Physical)
New Orleans, Louisiana 70130
3436 Magazine Street, #8012 (Mailing)
New Orleans, LA 70115
Telephone: (504) 446-6506
Facsimile: (504) 754-7776
**Counsel for Plaintiff, Randy Allen**